**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LISA G. GARCIA, | ) | CV 13-8893-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **AND ORDER OF REMAND** |
| Defendant. | ) ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on December 12, 2013, seeking review of the Commissioner's denial of disability insurance benefits. The parties filed a consent to proceed before a United States Magistrate Judge on January 15, 2014. Plaintiff filed a motion for summary

1  judgment on June 5, 2014.  Defendant filed a motion for summary
2  judgment on July 2, 2014.  The Court has taken the motions under
3  submission without oral argument.  <u>See</u> L.R. 7-15; Minute Order, filed
4  December 16, 2013.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

   Plaintiff asserts disability since June 3, 2004, alleging back pain and depression (Administrative Record ("A.R.") 66-67, 148-49, 168, 175-77, 253, 270, 554, 586, 700).  Plaintiff's last insured date was December 31, 2009 (A.R. 13, 163).

   An Administrative Law Judge ("ALJ") found Plaintiff had the following severe impairments through the date last insured: "work-related back injury with lumbar disc herniation, status post L3-4 laminectomy and discectomy, and chronic back pain with right lower extremity radiculopathy" (A.R. 15).  The ALJ found that, during the relevant time period, Plaintiff's alleged depression was not severe (A.R. 16).  The ALJ also found that through the date last insured: (1) Plaintiff retained an unlimited mental residual functional capacity; (2) Plaintiff retained a limited physical residual functional capacity sufficient for a restricted range of sedentary

///
///
///
///
///
///

2

work (A.R. 17);[1] and (3) a person with Plaintiff's residual functional capacity could have performed certain jobs identified by the vocational expert (A.R. 22-23; see A.R. 75-76 (vocational expert testimony)).

In denying benefits, the ALJ also found that Plaintiff did not meet or equal Listing 1.04 for disorders of the spine (A.R. 17). The ALJ stated that the medical evidence did not document listing-level severity, and no acceptable medical source made findings equivalent in severity to the criteria of any listed impairment, individually or in combination (A.R. 17). The Appeals Council considered additional evidence submitted after the ALJ's adverse decision but denied review (A.R. 1-5 (referencing A.R. 203-06)).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v.

---

[1] Specifically, the ALJ found that through the date last insured:

> [C]laimant could lift and carry no more than 10 pounds occasionally and frequently; she could sit 6 hours in an 8 hour workday; she could stand and walk 2 hours in an 8 hour workday; she was limited to occasional balancing, stooping, crouching, crawling, kneeling and stair/ramp climbing; and she was completely barred from ladder, rope or scaffold climbing.

(A.R. 17).

3

Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

Where, as here, the Appeals Council considered additional evidence but denied review, the additional evidence becomes part of the record for purposes of the Court's analysis. See Brewes v. Commissioner, 682 F.3d at 1163 ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."; expressly adopting Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993)); Taylor v. Commissioner, 659 F.3d 1228, 1231 (2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"); Penny v. Sullivan, 2 F.3d 953, 957 n.7 (9th Cir. 1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); see generally 20 C.F.R. §§ 404.970(b), 416.1470(b).

///
///
///
///

**DISCUSSION**

The Administration materially erred in connection with the evaluation of Plaintiff's alleged depression. Remand is appropriate.

**I.  Summary of the Medical Records Relevant to Plaintiff's Alleged Depression**

Plaintiff suffered a work-related injury to her lower back on August 6, 2003 (A.R. 270). From the time of her injury until the alleged onset date of June 3, 2004, Plaintiff continued to work with modified duties or regular duties, based on the severity of her symptoms (A.R. 270-72). All of the available treatment records are from Plaintiff's Worker's Compensation claim arising from the injury. There are no outside treatment records. See A.R. 207-770 (medical records); see also A.R. 67 (Plaintiff testifying that she had no doctors other than the Worker's Compensation doctors).

On June 29, 2005, Plaintiff's treating orthopedic surgeon, Dr. John Larsen, opined that Plaintiff should be "referred to psychiatry for depression" (A.R. 253). Dr. Larsen had treated Plaintiff for her back condition since August 5, 2004. See A.R. 252-76 (treatment records through June 29, 2005).

The record contains a summary of the medical evidence prepared by treating orthopedic surgeon Dr. Khalid B. Ahmed, as part of a Qualified Medical Evaluation ("QME"), dated January 27, 2011 (A.R. 684-706). Dr. Ahmed summarized a "Permanent and Stationary

Comprehensive Medicolegal [sic] Evaluation" by psychologist, Dr. Erica Wilson, evidently dated February 13, 2006 (A.R. 698-700). Dr. Wilson's report, which is not included in the Administrative Record, reportedly diagnosed Major Depressive Disorder, Single Episode, Moderate, with a Global Assessment of Functioning Score ("GAF") of 58[2] (A.R. 699-700). Dr. Wilson apparently recommended monthly follow up consultation for a minimum of six months with a psychiatrist (A.R. 700). The record contains no psychiatric treatment notes following Dr. Wilson's evaluation. On October 15, 2009, Plaintiff reported to Dr. Ahmed symptoms of anxiety, depression and insomnia (A.R. 284).

On November 24, 2009, treating psychologist Dr. Jason H. Yang evaluated Plaintiff (A.R. 553-68).[3] Consistent with Dr. Wilson's

---

[2] Clinicians use the GAF scale to report an individual's overall psychological functioning. The scale does not evaluate impairments caused by physical or environmental factors. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

[3] Prior to the ALJ's decision in this case, the California Department of Social Services terminated Dr. Yang's service as a consultative examiner. See Brandl v. Astrue, 2012 WL 3887097, at *4 (C.D. Cal. Sept. 7, 2012) (reflecting that Dr. Yang's services were terminated on July 22, 2009). The reasons for Dr. Yang's termination included the fact that Dr. Yang had rendered consultative examination reports containing "identical or nearly identical mental status examination findings" for many different claimants. See id. On remand, the Administration should consider the impact of the 2009 termination on the credibility of Dr. Yang and on the validity of Dr. Yang's treating opinion regarding Plaintiff. Compare 20 C.F.R. §§ 404.1503a, 416.903a (for "program integrity," the Administration
(continued...)

6

recommendation, Plaintiff reported that she had seen a psychiatrist for outpatient therapy in 2005 and 2006 due to feelings of depression related to her work injury and the death of her mother (A.R. 554). Plaintiff reportedly often suffered from anxiety attacks and depression and related "thoughts of suicide" (A.R. 556). Plaintiff reportedly was coping with the death of her brother in June of 2009, and was in tears during her interview (A.R. 555).

Dr. Yang's November, 2009 report recites the performance of a number of tests on Plaintiff as part of the psychological assessment (A.R. 558-65). The results of these tests reportedly suggested that Plaintiff has moderate to severe depression (id.). Dr. Yang diagnosed Plaintiff with Major Depressive Disorder, Moderate, Non-Psychotic, Reoccurred, and assigned a current GAF score of 54 (A.R. 565). Dr. Yang opined that Plaintiff has "serious symptoms of depression and anxiety that must be addressed and alleviated if she is to remain in the work force" (A.R. 566). Dr. Yang referred Plaintiff for weekly biofeedback treatment and prescribed fluoxetine (Prozac) (A.R. 566; see also A.R. 200 (initial prescription)).[4] Dr. Yang provided a second prescription for fluoxetine on March 18, 2010 (A.R. 199).

///
///

---

[3](...continued)
will not use any consultative examiner who is currently excluded, suspended or otherwise barred from participation in any federally funded program).

[4] See Fluoxetine (Rx), available online at reference.medscape.com/drug/prozac-sarafem-fluoxetine-342955 (last visited July 23, 2014) (listing Prozac as the brand name for fluoxetine).

Treating psychologist Dr. Cherie Cancea prepared a Mental Disorder Questionnaire Form dated April 2, 2010 (approximately three months after the date last insured) (A.R. 586-90). Dr. Cancea stated that Plaintiff's most recent examination had been on March 18, 2010, but notes from this examination are not a part of the record (A.R. 590). Dr. Cancea listed the date of Dr. Yang's evaluation as the date of Plaintiff's first examination, and stated that Plaintiff had been attending biofeedback sessions weekly (A.R. 590). The record contains no treatment notes for Plaintiff's biofeedback sessions. Dr. Cancea acknowledged Dr. Yang's initial diagnosis and GAF score and provided a current diagnosis of "Major Depressive D/O - recurrent" (A.R. 590). Dr. Cancea opined that Plaintiff's "single episode" of Major Depressive Disorder had "become recurrent" (A.R. 590). While Plaintiff supposedly had responded well to treatment, she reportedly had relapsed when she lost her prescription (A.R. 590). Dr. Cancea reportedly expected "full remission" in three to four months (A.R. 590). Dr. Cancea opined that Plaintiff's ability to focus and make decisions would be impacted by poor concentration, her ability to maintain a regular work schedule would be impacted by poor motivation, loss of sleep and fatigue, and her ability to interact with others would be affected by social withdrawal and crying spells (A.R. 589).

Plaintiff did not undergo a psychiatric consultative examination as part of her social security disability review. However, non-examining state agency physician Dr. R. Tashjian reviewed Dr. Cancea's questionnaire and prepared a Psychiatric Review Technique form dated May 7, 2010 (A.R. 594-604). Dr. Tashjian indicated that Plaintiff had "MDD" (Major Depressive Disorder) which did not precisely satisfy the

diagnostic criteria for Listing 12.04 for Affective Disorders (A.R. 596-97). Dr. Tashjian also completed a Mental Residual Functional Capacity Assessment dated May 7, 2010, finding that Plaintiff would have moderate limitations carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the general public, and responding appropriately to changes in the work setting (A.R. 591-93). Dr. Tashjian opined that Plaintiff would be capable of completing "simple repetitive tasks" (A.R. 593).

Internal medicine consultant Dr. Parveen Ahmed examined Plaintiff and prepared reports in the fall of 2011 (A.R. 753-70). Plaintiff reportedly had been experiencing depression and anxiety (A.R. 756).

Finally, Dr. Khalid Ahmed's QME dated January 27, 2011, diagnosed "anxiety and depression" (A.R. 703).

**II.  Analysis**

Social Security Ruling ("SSR") 85-28 governs the evaluation of whether an alleged impairment is "severe":

> An impairment or combination of impairments is found "not severe" . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . i.e., the person's impairment(s) has no more than a minimal effect on his or

>     her physical or mental ability(ies) to perform basic work
>     activities. . . .
>
>     If such a finding [of non-severity] is not clearly
>     established by medical evidence, however, adjudication must
>     continue through the sequential evaluation process.
>
>                              * * *
>
>     Great care should be exercised in applying the not severe
>     impairment concept. If an adjudicator is unable to
>     determine clearly the effect of an impairment or combination
>     of impairments on the individual's ability to do basic work
>     activities, the sequential evaluation process should not end
>     with the not severe evaluation step. Rather, it should be
>     continued.

SSR 85-28 at *3-4;[5] see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (the severity concept is "a de minimis screening device to dispose of groundless claims"); accord Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005).

In the present case, the medical evidence does not "clearly establish" the non-severity of Plaintiff's alleged depression. Rather, the medical evidence, including the opinions of three

---

[5] Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

treating/examining psychologists, appears to suggest that Plaintiff's alleged depression causes more than "minimal" effects on Plaintiff's mental ability to perform certain basic work activities. Yet, the ALJ not only found that Plaintiff has no severe mental impairment but also found that Plaintiff retains an unlimited mental residual functional capacity. The ALJ's findings violated SSR 85-28 and the Ninth Circuit authorities cited above.

The respect ordinarily owed to treating and examining physicians' opinions buttresses the Court's conclusion that the ALJ erred. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. . . . ¶ The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (a consultative examiner's opinion based on independent clinical findings constitutes substantial evidence) (citations omitted); accord Garrison v. Colvin, ___ F.3d ___, 2014 WL 3397218, at *14 (9th Cir. July 14, 2014) (discussing deference owed to treating and examining physician opinions). In this case, the ALJ expressly gave "little weight" to Dr. Cancea's opinion, and did not indicate what weight, if any, she gave to Dr. Wilson's and Dr. Yang's opinions that Plaintiff had moderate mental limitations (A.R. 16). Rather, the ALJ apparently rejected these opinions, as well as the state agency physician's opinion, based on: (1) the absence of evidence of "significant" mental health treatment through the date last insured; and (2) the fact that there purportedly was no medical evidence documenting a "severe"

11

mental condition lasting a continuous 12 months during the relevant period (A.R. 16). As discussed below, these stated reasons are not supported by substantial evidence.

With regard to reason (1), the Ninth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations omitted); see also Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (observing that mental illness is notoriously under-reported); Etter v. Colvin, 2014 WL 2931145, at *2-3 (C.D. Cal. June 26, 2014) (finding ALJ's residual functional capacity determination not supported by substantial evidence where ALJ gave "little" weight to the psychiatric consultative examiner's opinion and, in doing so, highlighted that the claimant had not received mental health treatment; citing, inter alia, Nguyen v. Chater).

In reason (2), the ALJ found that there was insufficient medical evidence of any "severe" depression lasting a continuous 12 month period (A.R. 16). However, the medical evidence of record was sufficient under SSR 85-28 and the applicable "de minimis" threshold standard to require further evaluation and analysis. From the record, it appears that Plaintiff may have been suffering from depression as early as June 29, 2005, when her then-treating physician, Dr. Larsen, referred Plaintiff for psychiatric treatment for depression (A.R. 253). When Dr. Wilson examined Plaintiff seven and one-half months later, on or around February 13, 2006, Dr. Wilson opined that

Plaintiff had Major Depressive Disorder and would require psychiatric treatment for a minimum of six months (A.R. 700). This evidence suggests that Plaintiff's reported/observed depression may well have had a duration of greater than 12 months. Additionally, when Plaintiff was evaluated by Dr. Khalid Ahmed on October 15, 2009, she reported that she had anxiety, depression and insomnia because of her pain and inability to recover after her spinal surgery (A.R. 284). Plaintiff had been reporting constant moderate pain since at least March 6, 2008 (A.R. 526, 734, 740-41). By the time Plaintiff was seen by Dr. Yang on November 24, 2009, her Major Depressive Disorder was found to have "reoccurred" (A.R. 565). Dr. Cancea confirmed Major Depressive Disorder as of April 2, 2010, though Dr. Cancea reportedly expected remission three to four months into the future (A.R. 590). This evidence suggests that Plaintiff's arguably "severe" depression may have well have lasted for at least 12 continuous months. Certainly, the evidence did not "clearly" establish the contrary.

Viewing the evidence as a whole, the Court finds that Plaintiff's alleged depression could not properly be "screened" out under the "<u>de minimis</u>" threshold standard applicable at step two of the disability analysis. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d at 1290. The types of impairments that are screened out at step two are those that are "of a minimal nature which could never prevent a person from working." SSR 85-28 at *2 (citation omitted). In this case, Plaintiff's depression was found to be "moderate" by all examining psychologists, and the medical evidence does not clearly establish a duration of less than 12 months.

///

1  The Court is unable to deem the ALJ's errors to have been
2 harmless. In the residual functional capacity adopted by the ALJ and
3 included in the questioning that led to the vocational expert's
4 identification of jobs Plaintiff purportedly could perform, the ALJ
5 assumed that Plaintiff has no mental limitations whatsoever. See A.R.
6 17, 75-76. The vocational expert did not testify whether there would
7 be any jobs performable by a person having mental limitations in
8 combination with Plaintiff's significant physical limitations. See
9 A.R. 75-78.
10
11  Because the circumstances of this case suggest that further
12 administrative review could remedy the ALJ's errors, remand is
13 appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see
14 generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an
15 administrative determination, the proper course is remand for
16 additional agency investigation or explanation, except in rare
17 circumstances).
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded

---

[6] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. However, the Court observes that Plaintiff's summarization of the record in arguing that the ALJ erred with respect to Listing 1.04a contains inaccuracies. For example, Plaintiff asserts that there was evidence that she had motor loss with sensory or reflex loss and a positive straight leg raising test sitting and supine. See Plaintiff's Motion at 5 (citing A.R. 742). The record citation does not support either of these assertions. The citation is to a report prepared by orthopedic surgeon Dr. Michael D. Ciepiela who examined Plaintiff on or around September 23, 2009 (A.R. 732-46). On examination, Dr. Ciepiela noted, inter alia, that Plaintiff had <u>normal reflexes and strength</u>, decreased sensation in the right L4 distribution, <u>but negative seated and supine straight leg raising</u> (A.R. 742) (emphasis added). Plaintiff also asserts that consultative examiner Dr. J. Pierce Conaty's findings "all point to a listing level impairment." See Plaintiff's Motion at 6. To the contrary, Dr. Conaty found on examination that Plaintiff had negative Lasègue (Straight Leg Raising) testing bilaterally – an element required for Listing 1.04a. See A.R. 572 (noting that straight leg raising seated was 80 degrees bilaterally, and 20 degrees supine, and Lasègue test is negative bilaterally); see also Straight Leg Raise Test, available online at www.physio-pedia.com/Straight_Leg_Raise_Test (last visited July 24, 2014) ("Neurologic pain which is reproduced in the leg and low back between 30-70 degrees of hip flexion is a positive result of lumbar disc herniation at the L4-S1 nerve roots. . . . Pain at less than 30 degrees of hip flexion might indicate acute spondyloithesis, gluteal abscess, disc protrusion or extrusion, tumor of the buttock, an acute dural inflammation, a malingering patient, or the sign of the buttock. Pain at greater than 70 degrees of hip flexion might indicate tightness of the hamstrings, gluteus maximus, hip capsule or a pathology of the hip or sacroiliac joints."); Lasègue sign, available online at www.physio-pedia.com/Lasègue_sign (last visited July 24, 2014) (Lasègue sign is also known as the Straight Leg Raise test); Primero v. Astrue, 2013 WL 394883, at *2 n.6 (C.D. Cal. Jan. 31, 2013) (same).

for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 1, 2014.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE